# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UGI SUNBURY LLC, | No. 3:16-CV-00794 |
| Plaintiff. | (Judge Brann) |
| v. | |
| A PERMAMENT EASEMENT FOR 0.4308 ACRES, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 31, 2018

## I. BACKGROUND

On July 1, 2015, UGI applied to the Federal Energy Regulatory Commission for authorization under the Natural Gas Act[1] to construct a 34.4-mile natural gas pipeline and related facilities through portions of Snyder, Union, Northumberland, Montour, and Lycoming Counties, to a power plant located in Snyder County (the "Sunbury Pipeline Project").[2]  FERC approved UGI's application and issued a certificate of public convenience and necessity ("FERC Certificate") to UGI on April 29, 2016.[3]

---

[1] 15 U.S.C. § 717f(c).

[2] UGI Sunbury, LLC, 155 FERC 61 ¶ 61,115 at 1-2 (2016).

[3] *Id.*

Because the planned pipeline traversed the Defendants' property, UGI needed to obtain permanent easements from the Defendants for the areas on (and under) which the pipeline and related facilities would sit once completed. UGI also needed to obtain temporary easements for areas of the Defendants' land that would be occupied temporarily during the construction. The parties attempted to negotiate compensation terms for those easements, to no avail. Consequently, UGI filed a complaint in this Court, seeking to obtain the necessary easements through condemnation.[4]

On August 2, 2016, this Court issued an Order granting the requested easements to UGI.[5] A bench trial was subsequently held on May 17, 2018, in order to determine the amount of compensation owed to Defendants as a result of that taking.

The first witness at trial was the Defendants' land valuation expert, Don Paul Shearer, who explained that the subject property was located along the commercial portion of Routes 11 and 15 in the Borough of Shamokin Dam, Snyder County,

---

[4] *See* 15 U.S.C. § 717f(h) ("When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.")

[5] ECF Nos. 23, 24.

Pennsylvania.[6] Although the subject property had some buildings on it, Mr. Shearer explained that they were currently not being utilized.[7]

Mr. Shearer calculated the pre-taking value of Defendants' property by using the "sales comparison approach."[8] After analyzing the 1.6-acre property, Mr. Shearer determined that its "highest and best use" was for future commercial development.[9] As a result, he selected three nearby, recently-sold commercial properties to use as comparators, which ranged in size from 0.6 to 2.0 acres.[10] The comparators' overall sales prices ranged from $750,000 to $975,000; calculated on a per-acre basis, the least expensive property sold for $375,000 per acre, the most for $1,541,667 per acre.[11] After comparing the qualities of these properties to the qualities of Defendants' property, Mr. Shearer calculated that Defendants' property was worth $475,000 per acre, for a total value of $760,000.[12]

Mr. Shearer could not find comparable properties to use when calculating the property's post-taking value (*i.e*, properties sold after the installation of a natural gas pipeline);[13] therefore, he relied, in part, on a self-authored "damaged

---

[6] May 17, 2018 Trial Transcript ("Trial Transcript"; ECF No. 109) at 13.

[7] Trial Transcript at 17.

[8] Trial Exhibit D-3, Don Paul Shearer's Appraisal Report ("DPS Report") at 20-21.

[9] DPS Report at 18.

[10] *Id.* at 20-21.

[11] *Id.*

[12] *Id.* at 21.

[13] *Id.* at 21.

goods" theory.[14] Under this theory, potential buyers of Defendants' property would, when calculating the property's value, consider not only the land actually utilized and occupied by the gas pipeline and its appurtenances, but would also consider the fact that the remaining land "potentially could be damaged"—presumably, by a natural gas pipeline explosion.[15] This potential danger would, under Mr. Shearer's theory, create a "stigma" on the property, lowering its value.[16] In his report, Mr. Shearer admitted that "[m]easuring the effect of [such] stigma on value can be difficult," and that "[i]t is often and most usually difficult for a qualified real estate appraiser or analyst to quantify the actual loss . . . as an objective opinion."[17] Correspondingly, "[a]ny opinion of said diminution in value is very subjective."[18]

Mr. Shearer's report noted that the permanent easement covered 27% of the total land area of the Defendants' property, and that the terms of the easement prevented Defendants from erecting any buildings upon it, which "substantially reduced" the potential for development on the property.[19] Considering this fact, combined with the "stigma" damages discussed above, Mr. Shearer's opinion was that the post-taking value of Defendants' property was $304,000—a decrease from

---

[14] *Id.* at 8-9.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 7, 9.

[18] *Id.* at 21.

[19] *Id.* at 22.

its pre-taking value of 60%, or $456,000.[20] Mr. Shearer did not place a value on the taking of the temporary easement.[21]

The next witness was Donald D. Pontius, one of the trustees of the property.[22] Mr. Pontius testified that he had signed an agreement to sell the property for $875,000 in 2009, which price, in his opinion, fairly represented the property's pre-taking value.[23] Mr. Pontius also testified about his observations of the work that UGI had done on his property in order to install the pipeline.[24]

The next trial witness was John Gillooly, the land valuation expert for UGI. Like Mr. Shearer, Mr. Gillooly utilized the sales comparison approach to determine the subject property's pre-taking value.[25] Because Mr. Gillooly also determined that the property's highest and best use was for future commercial development, he—again, like Mr. Shearer—selected nearby commercial properties to serve as comparators.[26] The sales prices of these comparator properties ranged from $650,000 to $1,000,000.[27] Based on various "adjustments" to these sales

---

[20] *Id.* at 22.
[21] Trial Transcript at 18.
[22] *Id.* at 80.
[23] *Id.* at 80, 82.
[24] *Id.* at 83.
[25] JG Report at 6.
[26] *Id.* at 22-26.
[27] *Id.*

prices, Mr. Gillooly concluded that Defendants' property was worth $750,000 before the taking, or $10.73 per square foot.[28]

To determine the property's post-taking value, Mr. Gillooly first concluded that UGI's use of the land encumbered by the permanent easement would "consume" 75% of that land's "fee value."[29] He then multiplied his pre-taking, per-square foot estimated value of $10.73 by the size of the permanent easement (18,766 square feet), and further multiplied that number by 75%.[30] The rounded result—$151,000—was Mr. Gillooly's appraisal of the value of the permanent easement; his appraisal of the land's post-taking value, then, was $599,000 ($750,000 - $151,000 = $599,000).[31]

To calculate the value of the temporary easement, Mr. Gillooly multiplied his pre-taking, per-square foot value of $10.73 by the size of the temporary easement (19,937 square feet), and multiplied that number by 6% (his calculation of the land's "annual rental rate"), which resulted in a (rounded) figure of $12,800.[32]

The final trial witness was Casey Monagan, the Sunbury Pipeline Project's project manager. Mr. Monagan discussed pipeline installation generally, including

---

[28] *Id.*

[29] *Id.* at 30.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 31.

how easements such as those taken from Defendants' property generally play out in practice.[33] Mr. Monagan also spent some time describing specifics of Defendants' property and some limitations on its potential use.[34]

## II. DISCUSSION

The parties have stipulated that the date of the taking was August 2, 2016,[35] but dispute whether federal or state substantive law applies to the determination of "just compensation."[36] For the reasons stated by the Honorable A. Richard Caputo of this Court in *Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*,[37] I will apply federal substantive law here.[38] Therefore, because the permanent easement is a partial taking—*i.e.*, because UGI did not take the entirety of Defendants' property, but only certain rights from certain portions of it—"just compensation" for that taking is determined "by the difference between the market value of the entire holding immediately before the taking and the remaining market

---

[33] Trial Transcript at 137-39.

[34] *Id.* at 130-36.

[35] *Id.* at 11.

[36] Defendants' Motion in Limine to Apply to State Law (ECF No. 64).

[37] No. 3:11-CV-00028, 2014 WL 690700, at *6-10 (M.D. Pa. Feb. 24, 2014) ("just compensation owed by [Plaintiff] to [the landowner] will be determined through application of federal law").

[38] Therefore, Defendant's Motion in Limine to Apply State Law will be denied. *See also Columbia Gas Transmission, LLC v. An Easement to Construct Operate and Maintain a 20 Inch Gas Transmission Pipeline*, Nos. 17-2096 & 17-3312, 2018 WL 3773655, at *2 n.4 (3rd Cir. Aug. 9, 2018) ("Federal law governs the measure of just compensation owed to landowners in condemnation actions under the Natural Gas Act." (citing *United States v. Certain Parcels of Land*, 144 F.2d 626, 628-30 (3rd Cir. 1944)).

value immediately thereafter of the portion of property rights not taken."[39] Defendants, as landowners, have the burden of proving the amount of just compensation they are owed.[40]

The two experts, Mr. Shearer and Mr. Gillooly, came to quite similar pre-taking values: $760,000 and $750,000, respectively. Mr. Pontius, however, believed that his property was worth significantly more: $875,000. Mr. Pontius's valuation, however, was based on a nearly 10-year-old unconsummated sale, the relevance of which (to present values, at least) may be questioned. Because this Court believes that both appraisers' methodologies were sound, it will split their estimates and find that the pre-taking value of Defendants' property was $755,000.

The experts, however, came to quite divergent appraisals of the property after the taking of the permanent easement. Mr. Gillooly believes that the land lost only $151,000 in value as the result of that taking. His calculation, however, assumes that *only* the land actually constituting the permanent easement lost any value. That is a difficult premise to accept: not only does it ignore any diminution in value to the land not actually touched by the permanent easement (diminution caused by, *inter alia*, a decrease in that land's usefulness due to the reduced area available for building), but it also assumes that a buyer would completely ignore

---

[39] *United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 n.3 (3rd Cir. 1990).

[40] *Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) at *11.

the fact that the land covers a comparatively large pipeline carrying explosive natural gas.

Instead, this Court is inclined to agree with Mr. Shearer that there was an overall decrease to the value of the property as a whole, which decrease is, at least in part, due to the "stigma" of being located so close to a natural gas pipeline.[41] This Court cannot, however, accept Mr. Shearer's opinion that the property's value decreased by an exceedingly large 60%—after all, the property maintains its prime location on a well-trafficked highway and may still be developed for some commercial use. Mr. Shearer himself said that his theory is based upon a "very subjective" foundation; consequently, this Court believes that the taking of the permanent easement resulted in a <u>30%</u> reduction in value. This Court, therefore, will find that the property's post-taking value was $528,500 and will award Defendants $226,500 in compensation for the taking of the permanent easement.

As noted above, Mr. Shearer did not place any value on the taking of the temporary easement. Consequently, the Court will accept Mr. Gillooly's appraisal, and will award Defendants $12,800 in compensation for the taking of the temporary easement.

---

[41] *See, e.g.*, *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996) ("[T]his Court [has] recognized the viability of claims for severance damages based on the likelihood that prospective buyers would fear hazards arising from the [condemnor's] use of condemned property."); *Vector Pipeline, L.P. v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 957 (N.D. Ill. 2001) ("evidence of stigma damages . . . may be credited"); *see generally* Vitauts M. Gulbis, Annotation, *Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding*, 23 A.L.R.4th 631 (1983).

## III. CONCLUSION

In sum, this Court will find that just compensation in this case is $226,500 for the permanent easement and $12,800 for the temporary easement, for a subtotal of $239,300. Defendants are entitled to prejudgment interest on that award;[42] at a rate of 3%,[43] that interest comes to $14,928.39. This Court, therefore, will enter judgment in favor of Defendants in the amount of $254,228.39.

## IV. FINDINGS OF FACT

1. Defendants own 1.6 acres of property at 2577 North Susquehanna Trail, Shamokin Dam, Snyder County, Pennsylvania ("the Property").

2. On August 2, 2016, this Court granted UGI Sunbury LLC a permanent easement and a temporary easement over the Property.

3. The permanent easement consisted of 18,766 square feet.

4. The temporary easement consisted of 19,937 square feet.

5. At the time of the taking, the Property contained some buildings but was not being utilized for commercial purposes.

6. UGI Sunbury installed a natural gas pipeline under the land covered by the permanent easement.

---

[42] *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 11 (1984)

[43] The rate of prejudgment interest is within this Court's discretion. *Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, 2014 WL 690770 at *13 (M.D. Pa. Feb. 24, 2014). In this case, the prejudgment interest began accruing on the undisputed date of the taking (August 2, 2016).

7. UGI Sunbury utilized the land covered by the temporary easement for a period of one year during the construction of that pipeline.

8. The highest and best use of the Property is for future commercial development.

9. The market value of the Property immediately before the taking was $755,000.

10. The taking of the permanent easement caused the value of the Property to decrease in value because of the reduced area available to build on the Property and because of the "stigma' associated with having a natural gas pipeline installed on the property.

11. The market value of the Property immediately after the taking was $528,500.

12. Just compensation for the taking of the permanent easement, then, was $226,500.

13. Just compensation for the taking of the temporary easement, then, was $12,800.

14. Total just compensation for the taking of the permanent and the temporary easements was $239,300.

15. Defendants are entitled to 3% interest on their total just compensation award, beginning on August 2, 2016, for a total of $14,928.39.

16. The total award to the Defendants from UGI Sunbury, therefore, is $254,228.39.

## V. CONCLUSIONS OF LAW

1. The Defendants are entitled to just compensation from UGI Sunbury for the taking of their property.[44]

2. Federal law governs the calculation of that compensation.[45]

3. Under federal law, just compensation "is measured by the difference between the market value of the entire holding immediately before the taking and the remaining market value immediately thereafter of the portion of property rights not taken."[46]

4. Immediately before the taking, the market value of the Defendants' property was $755,000.

5. Immediately after the taking, the market value of the Defendants' property was $528,500.

6. Therefore, just compensation for the taking of the permanent easement on the Defendants' property is $226,500.

7. Just compensation for the taking of the temporary easement on the Defendants' property was $12,800.

---

[44] *United States v. Miller*, 317 U.S. 369 (1943); 15 U.S.C. § 717f(h).

[45] *Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, 2014 WL 690700 at *10 (M.D. Pa. Feb. 24, 2014).

[46] *United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 n.3 (3rd Cir. 1990).

8. The total just compensation owed to the Defendants for the permanent and the temporary easements is $239,300.

9. The Defendants are entitled to 3% prejudgment interest on their award.

10. Prejudgment interest began accruing on August 2, 2016—the date of the taking.

11. The Defendants are entitled to $14,928.39 in prejudgment interest.

12. The Defendants' total award, therefore, is $254,228.39.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge