IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UGI SUNBURY LLC, | No. 3:16-CV-00794 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| A PERMANENT EASEMENT FOR 0.4308 ACRES, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**SEPTEMBER 28, 2021**

More than five years after obtaining the easements needed to construct a natural gas pipeline that cut through the property owned by Donald Pontius and his wife, energy company UGI Sunbury LLC attempted to relinquish certain easement rights by amending its Complaint—an action it took without leave of court or stipulation by all parties. Pontius objects, arguing that given the events that transpired in the intervening years—including the construction of the pipeline, a full just compensation trial, and a successful appeal—UGI cannot unilaterally amend its Complaint at this juncture. The Court agrees with Pontius. For the reasons provided below, Pontius's objections to UGI's Amended Complaint are sustained.

**I.     BACKGROUND**

On May 6, 2016, UGI filed its initial Complaint in Condemnation, seeking to acquire by eminent domain easements for use in constructing a natural gas transmission pipeline across the Pontius property in the Borough of Shamokin Dam,

Snyder County, Pennsylvania.[1] The initial Complaint sought, among other things, a "permanent right of way and easement . . . for the purpose of constructing, operating, maintaining, altering, repairing, changing the size of, replacing and removing a pipeline and all related equipment and appurtenances thereto (including but not limited to meters, fittings, tie-overs, valves, cathodic protection equipment and launchers and receivers)" as well as a restriction on Pontius's ability to "use said permanent right of way or any part thereof for a road."[2]

On August 2, 2016, the Court granted UGI's Motion for Preliminary Injunction and Motion for Partial Summary Judgment (the "August 2016 Order"),[3] "thereby allowing [UGI] access and possession of a portion of the [Pontius] property for construction of the underground natural gas transmission pipeline and the use of temporary work space needed during construction activity."[4] Put another way, the Court granted UGI the easement rights requested in its initial Complaint—including the right to install aboveground appurtenances and prevent certain vehicle traffic above the pipeline.[5]

After the Court's August 2016 Order, "UGI installed the pipeline on [Pontius's] property and restored the surface of the property."[6] Both parties then hired expert

---

[1] Doc. 1.
[2] *Id*. at ¶ 1(i).
[3] Doc. 24.
[4] Doc. 143 at 2.
[5] Doc. 23; Doc. 24.
[6] Doc. 143 at 2–3.

witnesses to conduct appraisals of the property.[7] On May 17, 2018, the action proceeded to a bench trial and the parties presented testimony by their respective expert witnesses.[8] After the trial, the Court issued its ruling and directed the Clerk to enter judgment in favor of Defendants in the amount of $254,228.39.[9]

On September 24, 2018, UGI filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit.[10] The Third Circuit issued its decision on February 11, 2020, holding that the Court improperly admitted and relied on the testimony of Pontius's appraisal expert.[11] Accordingly, the Third Circuit vacated the Court's judgment and remanded the case for a new valuation hearing.[12]

The Court held a status conference with the parties on April 22, 2020, and then instructed the parties to produce new valuation evidence from their respective appraisal experts by October 23, 2020.[13] The parties did so: Pontius produced a report by William F. Rothman of RSR Appraisers & Analysts, dated September 28, 2020,[14] and UGI produced a report by Matthew Krauser of Newmark Knight Frank, dated October 22, 2020.[15]

---

[7]   *See* Doc. 63, Ex. A (Aug. 2, 2016 Appraisal Report by Don Paul Shearer); Doc. 66, Ex. A (Feb. 19, 2016 Appraisal Report by John Gillooly and Matthew S. Krauser).
[8]   *See* Doc. 109.
[9]   Doc. 114.
[10]  Doc. 116.
[11]  *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825 (2020).
[12]  *Id.* at 837.
[13]  Doc. 127.
[14]  Doc. 143, Appx. Tab 1.
[15]  Doc. 145, Appx. 1–68.

Nearly six months later, on April 13, 2021, UGI filed an Amended Complaint that, among other things, altered the scope of the easements by removing language that granted UGI the right to install aboveground appurtenances on the Pontius property and restrict certain vehicle activity above the pipeline.[16] Prior to amending its Complaint, UGI neither sought leave of court nor reached an agreement with Pontius to amend by stipulation. On April 30, 2021, Pontius filed its Answer,[17] which includes three objections "alleging that a plain reading of [Rule 71.1] does not permit amendment at this time."[18] As part of their briefing on Pontius's separate motion *in limine* to exclude the testimony and report of UGI's appraisal expert, Mr. Krauser, the parties fully briefed the objections Pontius raised to UGI's Amended Complaint[19]; as such, the objections are now ripe for disposition.

## II.   ANALYSIS

In his Answer to UGI's Amended Complaint, Pontius raises three objections[20]:

> (1)   The time for amending the complaint has expired because the trial on compensation has occurred[21];

---

[16] Doc. 138 at ¶ 1 n.1.
[17] Doc. 139.
[18] Doc. 145 at 5.
[19] *See id.* at 15–19; Doc. 146 at 7–10; Doc. 150 at 7–9.
[20] Raising substantive legal objections in the answer is consistent with the demands of Federal Rule of Civil Procedure 71.1, which governs condemnation proceedings. Rule 71.1 provides that "[a] defendant waives all objections and defenses not stated in its answer," emphasizing that "[n]o other pleading or motion asserting an additional objection is allowed." Fed. R. Civ. P. 71.1(e)(3); *see also Gov't of Virgin Islands v. 19.623 Acres of Land*, 536 F.2d 566, 569–70 (3d Cir. 1976) (defenses not raised in the answer are waived).
[21] Doc. 139 at 8–9.

(2) Regardless of whether Rule 71.1(f) permits amendment, UGI's right to do so has been "[a]brogated" by the Supreme Court of the United States' decision in *Knick v. Township of Scott, Pennsylvania*[22]; and

(3) UGI's Amended Complaint is inconsistent with Rule 71.1(i)(1), which restricts the ability of a court or plaintiff to dismiss claims if the plaintiff has already obtained title to the property, a lesser interest in the property, or possession of the property.[23]

Taken together, Pontius's objections present two questions. First, the Court must determine whether UGI, when it initially obtained its requested easements as to the Pontius property, received the property rights it now seeks to relinquish—that is, the right to install aboveground appurtenances on the property and restrict certain vehicle traffic above the pipeline. Second, the Court must ascertain whether UGI has the right to unilaterally amend its Complaint at this juncture.

A. **The Scope of UGI's Easement**

Federal Rule 71.1 dictates that a complaint in condemnation shall "contain a short and plain statement of . . . the interests to be acquired."[24] As the Supreme Court has stated, that rule "requires the filing in federal district court of a 'complaint in condemnation,' identifying the property and the interest therein that the United States wishes to take."[25] Therefore, "what controls is the acquired rights, not [the] intent" of the condemnor.[26]

---

[22] *Id.* at 10–12 (citing *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168 (2019)).
[23] *Id.* at 12–13.
[24] Fed. R. Civ. P. 71.1(c)(2).
[25] *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4 (1984).
[26] *Columbia Gas Transmission, LLC v. 101 Acres More or Less in Heidelberg Township, York Cty., Pennsylvania, et al.*, 2016 WL 6248071, at *10 (M.D. Pa. Oct. 26, 2016).

When UGI filed its initial Complaint in May 2016, it sought, among other things, a "permanent right of way and easement . . . for the purpose of constructing, operating, maintaining, altering, repairing, changing the size of, replacing and removing a pipeline and all related equipment and appurtenances thereto (including but not limited to meters, fittings, tie-overs, valves, cathodic protection equipment and launchers and receivers)" as well as a restriction on Pontius's ability to "use said permanent right of way or any part thereof for a road."[27] This Court's August 2016 Order granting UGI its requested easements thus provided UGI the right to construct aboveground appurtenances on the Pontius property and restrict certain vehicle activity above the pipeline.[28] UGI's argument, based on the testimony its Project Manager gave at the May 2018 compensation hearing, that these rights "have not actually been taken,"[29] misses the mark. It may very well be that UGI never *exercised* its rights to build aboveground appurtenances or prevent vehicle travel and parking, but it is factually incorrect to assert that it never *possessed* these rights.[30]

### B. The Right to Amend the Complaint

Rule 71.1(f) provides that "[w]ithout leave of court, the plaintiff may—as often as it wants—amend the complaint at any time before the trial on compensation." However, this right to amend its complaint without first obtaining leave of court or

---

[27] Doc. 1 ¶ 1(i).
[28] Doc. 24.
[29] Doc. 146 at 7, 9.
[30] The Court's finding that the easements UGI obtained included the property rights disputed here does not preclude UGI from contesting at trial the value of these rights: "Of course, [UGI] remains free to advance factual arguments relating to the burden on the land caused by the condemnation." *Columbia Gas*, 2016 WL 6248071, at *10.

agreement from the opposing parties is subject to a significant limitation: "[N]o amendment may be made if it would result in dismissal inconsistent with Rule 71.1(i)(1) or (2)."[31] In pertinent part, Rule 71.1(i)(1) authorizes the Court to "dismiss the action as to a piece of property" after a motion or a hearing; however, "if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken."[32] Interpreting these sections of Rule 71.1, the Supreme Court has issued the following guidance:

> After commencement of the valuation hearing, the [plaintiff] may dismiss the suit only pursuant to a stipulation with the owner, or with the approval of the district court. The Rule does not suggest that a court order dismissing a suit has the effect of nullifying a taking that has already occurred. Indeed, to the contrary, the Rule forbids the district court to dismiss an action (without awarding just compensation) if the [plaintiff] has acquired any "interest" in the property.[33]

Here, Pontius argues that because UGI obtained its easements (including the property rights UGI now seeks to relinquish) regarding his property in August 2016, granting "UGI's proposed Amendments [to the Complaint] would result in a dismissal

---

[31] Fed. R. Civ. P. 71.1(f).
[32] Pontius characterizes his second objection as follows: "Regardless of Whether FRCP 71.1(f) Permits Amendment, it has been Abrogated by Implication by the United States Supreme Court's Decision in *Knick*." Doc. 139 at 10. UGI interprets this objection as arguing that "Rule 71.1(f) has been abrogated by implication by the *Knick* decision." Doc. 146 at 10. The Court reads this objection differently. It is the Court's understanding that Pontius is arguing that pursuant to *Knick*, UGI's *right to amend* has been abrogated—not that *Knick* abrogated Rule 71.1(f). Put another way, because the Supreme Court in *Knick* held that "a property owner found to have a valid takings claim is entitled to compensation as if it had been paid contemporaneously with the taking," 139 S. Ct. at 2168, Pontius is entitled to compensation for the full scope of the taking at the time easements were granted; UGI cannot retroactively reduce the scope of the taking and thereby decrease the amount of money it owes Pontius.
[33] *Kirby*, 467 U.S. at 12 n.18.

of Pontius's rights to full compensation" in a manner inconsistent with the dismissal process detailed in Rule 71.1(i)(1).[34] In support of its Amended Complaint, UGI directs the Court to several cases in which the plaintiffs-condemnors were permitted to amend their complaints to "reduce[] the scope of the taking[s] by removing some temporary easements from condemnation."[35] However, these cases are inapposite.

In *Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less*, the court allowed the plaintiff to amend its complaint to "delete[] references to condemnation of temporary easements on the property."[36] However, the court issued this ruling "before construction began."[37] Likewise, in *Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, the court permitted the filing of a new complaint that "amend[ed] the easement descriptions" and "slightly alter[ed] the route of the easement and reduce[d] the size of the taking,"[38] but this was done before the court granted the plaintiff a preliminary injunction authorizing "immediate entry and possession" and thus before the plaintiff began construction.[39]

The most factually and procedurally analogous case cited by UGI is *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, which the United States District Court for the Northern District of Illinois decided in 2003.[40] There, the court directly addressed the question of whether it was proper for the plaintiff to amend its complaint to limit

---

[34] Doc. 139 at ¶ 67.
[35] Doc. 146 at 8–9.
[36] 396 F. Supp. 3d 628, 643 (W.D. Va. 2019).
[37] *Id*.
[38] 2008 WL 1751358, at *23 n.12 (E.D. Wis. Apr. 11, 2008).
[39] *Id*. at *4.
[40] 2003 WL 1888730 (N.D. Ill. Apr. 14, 2003).

8

the scope of the property rights obtained via easement, and thereby decrease the just compensation to which the defendants were entitled.[41] Although the plaintiff had already "taken possession" of the land, the court held that plaintiff's unilateral amendment was proper. The court noted that "long before any appraisals by defendants relying upon a more expansive view of what they had given up, they were put on notice . . . that plaintiff's taking was more modest."[42] The court concluded that the amended complaint "merely memorialized that notice, and that [the plaintiff] could do."[43]

     However, *Guardian Pipeline* stands in stark contrast to another Takings Clause case from the Northern District of Illinois: *Vector Pipeline, L.P. v. 68.55 Acres of Land*.[44] In *Vector*, the plaintiff attempted to "unilaterally stipulate" that it "sought lesser rights [to the defendants' properties] than it had won," but it did so after "[t]he taking had occurred" and "the valuation hearing had . . . commenced."[45] In fact, by the time the plaintiff sought to decrease the scope of its easement, it "was in possession of the land and constructing the pipeline."[46] It was therefore unsurprising that "there had not been a stipulation forthcoming from defendants."[47] Accordingly, "no such amendment was possible."[48] The court held that the plaintiff "discovered that the

---

[41] *Id.* at *1–4.
[42] *Id.* at *4.
[43] *Id.* (citing *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 20 (5th Cir. 1969).
[44] 157 F. Supp. 2d 949 (N.D. Ill. 2001).
[45] *Id.* at 958.
[46] *Id.*
[47] *Id.*
[48] *Id.*

judgment it won gave more of a title than it wanted to pay for, but it must pay for what it won nonetheless."[49]

Here, the factual background preceding UGI's attempt to rescind certain easement rights by amending its Complaint is more akin to that in *Vector* than *Guardian Pipeline*. As in *Vector*, by the time UGI sought to amend its Complaint, it was already "in possession of the land and constructing the pipeline"[50]—indeed, UGI completed construction several years prior to its attempted unilateral modification of its easement rights. Moreover, unlike *Guardian Pipeline*, where the plaintiff took possession of the land but the parties had yet to conduct appraisals of the property's pre- and post-taking value,[51] both UGI and Pontius have not only hired experts to assess the cost of the condemnation, they have done so *twice*.

The Court therefore agrees with Pontius that "[a]llowing amendment [five] years after the original Complaint was filed and almost [three] years after the [initial] trial on compensation would seriously prejudice Pontius's right to just compensation because it would necessitate a new appraisal and cause unnecessary delay."[52]

---

[49] *Id*. (internal quotation marks omitted).
[50] *Id*.
[51] 2003 WL 1888730, at *4.
[52] Doc. 139 ¶ 59. Separately, UGI argues that "Rule 71.1 permits the complaint to be amended 'at any time before *the* trial on compensation.' While '*a*' trial in this matter has occurred, the judgment was vacated. *The* trial to determine compensation is yet to take place." Doc. 146 at 8 n.3. As a general matter, the Court is inclined to agree with UGI: where a district court's compensation ruling, issued following trial, is vacated by the circuit court and remanded for new valuation proceedings, the plaintiff may still possess the right to unilaterally amend the complaint prior to the second trial on compensation. However, as noted, the circumstances here are such that permitting UGI's unilateral amendment to the Complaint would effectively result in a partial dismissal of Pontius's claims in a manner inconsistent with Rule 71.1(i)(1).

Accordingly, the Court finds that under Rule 71.1(f), UGI did not have the right to unilaterally amend its Complaint at this juncture.

## III. CONCLUSION

Without leave of court or joint stipulation, UGI amended its Complaint to rescind rights to Pontius's property that it has held for more than five years. Permitting UGI's unilateral amendments to stand would thus deny Pontius the opportunity to seek full compensation for the taking, which would amount to a partial dismissal of Pontius's claims in a manner inconsistent with Rule 71.1(i)(1). As dictated by Rule 71.1(f), that is something the Court cannot do. Therefore, Pontius's objections to UGI's Amended Complaint are sustained. The Amended Complaint[53] is dismissed; the original Complaint,[54] filed on May 6, 2016, remains the operative complaint in the case.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[53] Doc. 138.
[54] Doc. 1.